[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14323
Non-Argument Calendar
_____

D.C. Docket Nos. 2:12-cv-00580-MHT-WC; 2:11-cr-00006-MHT-WC-1

JANIKA FERNAE BATES,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(May 19, 2016)

Before WILSON, WILLIAM PRYOR and ROSENBAUM, Circuit Judges.

PER CURIAM:

Janika Bates, a federal prisoner, appeals the denial of her motion to vacate

her sentence. *See* 28 U.S.C. § 2255. In her motion, Bates argued that her trial counsel was ineffective for failing to object when her sentence was miscalculated in violation of the Ex Post Facto Clause. Use by the district court of the guideline governing theft offenses that was in effect at the time of Bates's sentencing, *see* United States Sentencing Guideline § 2B1.1 cmt. n.4(E) (Nov. 2011), resulted in more persons being counted as victims of Bates's offenses, which resulted in a higher sentencing range than she would have faced under the guideline in effect when she committed her offenses, *see id.* § 2B1.1 cmt. n.1 (Nov. 2007). The government concedes that trial counsel was deficient in failing to object when the miscalculation of Bates's sentence plainly violated the Ex Post Facto Clause, but argues that counsel's error did not prejudice Bates because "the record suggests that it is unlikely the district court would have imposed a lower sentence." Because the district court imposed a sentence at the low end of Bates's advisory guideline range and there is a reasonable probability that her sentence would have been different if calculated correctly, we vacate the order denying Bates's motion to vacate her sentence and remand for resentencing.

## I. BACKGROUND

We divide the background into two parts. First, we discuss Bates's conviction and sentence. Second, we discuss Bates's motion to vacate.

## A. Bates's Conviction and Sentence

In 2011, a jury convicted Bates of one count of conspiring to defraud the United States, 18 U.S.C. § 286, eight counts of identity theft, *id.* § 1028(a)(7), (b)(1)(D), two counts of attempting or conspiring to commit wire fraud, *id.* §§ 1343, 1349, and two counts of aggravated identity theft, *id.* § 1028A(a)(1). Bates's offenses occurred between June 2005 and April 2007, but her presentence investigation report applied the 2011 version of the Sentencing Guidelines. The presentence report identified as victims the 54 individuals whose personal identification information Bates stole, the Internal Revenue Service, and HSBC Bank. The report stated that Bates used 46 of the individuals' personal information to claim a tax refund. The report grouped Bates's convictions for fraud, identity theft, and wire fraud to assign her a base offense level of seven, U.S.S.G. § 2B1.1(a)(1), and added four levels because her offense involved more than 50 victims, *id.* § 2B1.1(b)(2)(B). With a total offense level of 27 and a criminal history of I, the report provided a sentencing range of 70 to 87 months for Bates's grouped offenses, and two 24-month sentences for her aggravated identity theft offenses.

Bates objected to the four-level sentence enhancement. Bates argued that the report overstated the number of victims because the jury had acquitted her of some identity theft offenses charged in her indictment. Bates's argument led the district

court to question whether the government had proved that every individual whose personal information Bates had stolen had suffered a pecuniary loss, as required to constitute a victim under the 2007 commentary to section 2B1.1. *See* U.S.S.G. § 2B1.1 cmt. n.1 (Nov. 2007). The government responded that the proper inquiry was whether, under the expanded definition of victims of offenses involving means of identification that was included in the 2011 commentary to section 2B1.1, Bates used the individuals' "means of identification . . . unlawfully or without authority," *id.* § 2B1.1 cmt. n.4(E) (Nov. 2011). When asked by the district court how to sidestep the newer definition of victim, Bates answered that the jury's verdicts established the number of victims. The district court overruled Bates's objection to the enhancement.

Bates requested a downward departure or a downward variance, both of which the district court denied. While considering Bates's request for a variance, the district court asked Bates's probation officer to recommend an appropriate sentence. The probation officer suggested that Bates receive a sentence of 70 months for her grouped offenses to run consecutively to a 24-month sentence for her aggravated identity theft offenses and that Bates receive a sentence at the low end of her guideline range, but not a downward variance. The district court was troubled by Bates's apparent lack of remorse and subordination of a witness's perjury and thought that Bates had persuaded the witness to lie for her and had

4

mistreated other people. The district court judge said, "I can see giving [Bates] a sentence at the bottom of the guidelines, but I was thinking of giving her a variance." The district court judge also pondered why Bates resorted to criminal activities after having excelled at school.

The district court considered Bates's advisory guideline range and the statutory sentencing factors. 18 U.S.C. § 3553. The district court sentenced Bates to 70 months for her conspiracy, identity theft, and wire fraud offenses, and to a consecutive sentence of 24 months for her aggravated identity theft offenses. Bates did not appeal.

### B. Bates's Motion to Vacate

Bates moved to vacate her sentence on the ground that her trial counsel was ineffective for failing to object to the four-level enhancement of her sentence. Bates argued that none of the 54 individuals whose personal information she had stolen had suffered a pecuniary loss to qualify as a victim under the definition in effect at the time of her offense. *See* U.S.S.G. § 2B1.1 cmt. n.1 (Nov. 2007). Trial counsel submitted an affidavit recounting that he had argued Bates had only two victims, the Service and HSBC Bank.

Later, Bates filed an amended motion to vacate and argued that trial counsel was ineffective for failing to object to the four-level enhancement on the ground its application violated the Ex Post Facto Clause. Bates argued that the district court

5

plainly erred by applying the four-level enhancement in reliance on the definition of victim in effect at the time of Bates's sentencing in 2011 instead of the definition in effect when she committed her offense in 2007. Bates argued that trial counsel's ineffectiveness increased her sentence by 20 to 25 months.

The government responded that Bates's counsel was not ineffective. Had Bates objected, the government argued, it would have submitted evidence that her victims suffered actual losses, either attributable to delays in receiving tax refunds, to correcting credit reports, or to difficulties obtaining loans, which "would likely [have made her] subject to the 4-level enhancement." Bates was not entitled to postconviction relief, the government argued, because applying the definition of victim in effect in 2011 did not plainly violate the Ex Post Facto Clause and because her trial counsel was not expected to anticipate a change in the law.

Bates replied that she did not have more than 50 victims, as that term was defined in the 2007 guideline. Bates argued that *United States v. Wetherald*, 636 F.3d 1315 (11th Cir. 2011), had made plain that the application of the definition of victim in effect in 2011 resulted in an unlawful sentence.

The district court denied Bates's motion to vacate. The district court ruled that Bates was not prejudiced by her trial counsel's failure to object because she could not establish that the 54 individuals would not have counted as victims when the government could have proved that each individual suffered a pecuniary loss.

The district court granted Bates a certificate of appealability.

## II. STANDARD OF REVIEW

A claim of ineffective assistance of counsel presents a mixed question of law and fact that we review *de novo*. *Gordon v. United States*, 518 F.3d 1291, 1296 (11th Cir. 2008).

## III. DISCUSSION

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI. And "[t]he right to counsel is the right to the effective assistance of counsel" at trial and at sentencing. *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). To establish a claim of ineffective assistance of trial counsel, a defendant must prove "that counsel's performance was deficient" and that the "performance prejudiced the defense." *Id.* at 687.

For Bates to obtain relief under section 2255, she must satisfy the *Strickland* test for ineffectiveness. Bates must establish that a reasonably competent attorney would have objected to the sentence enhancement as a violation of the Ex Post Facto Clause and that there is a reasonable probability that the error affected the outcome of her case. *Id.* at 687, 693. The unobjected-to error "must at least satisfy the standard for prejudice that we employ in our review for plain error." *Gordon*,

518 F.3d at 1298. In other words, the error must have affected Bates's substantial rights. *See United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007). "A substantial right is affected if . . . there is a reasonable probability that there would have been a different result had there been no error." *United States v. Bennett*, 472 F.3d 825, 831–32 (11th Cir. 2006).

The government concedes that Bates's trial counsel was ineffective for failing to object to the plain error of the district court in misapplying the 2011 guideline, and we accept that concession. We have long recognized that the application of a Sentencing Guideline or its commentary retroactively must operate to the defendant's benefit. *United States v. Masferrer*, 514 F.3d 1158, 1163 (11th Cir. 2008) (approving use of the guideline in effect at the time of sentencing as advantageous to the defendant); *United States v. Marin*, 916 F.2d 1536, 1538 & n.4 (11th Cir. 1990) (vacating sentence and remanding for the district court to apply the more favorable guideline in effect when the defendant was sentenced). Although "[w]e apply the version of the sentencing guidelines and commentary in effect on the date of sentencing," *United States v. Wilson*, 993 F.2d 214, 216 (11th Cir. 1993) (citing 18 U.S.C. § 3553(a)(4)–(5)), "[p]ursuant to the Ex Post Facto Clause, if applying [that version of] the Guidelines . . . would result in a harsher penalty, a defendant must be sentenced under the Guidelines in effect at the time when [she] committed the offense," *United States v. Kapordelis*, 569 F.3d 1291,

1314 (11th Cir. 2009) (error in applying newer guidelines was harmless); *see United States v. Simmons*, 368 F.3d 1335, 1338 (11th Cir. 2004) (affirming use of the guidelines in effect at the time of the offense).

Several months before Bates's sentencing hearing, we recognized that the application of a guideline retroactively could still violate the Ex Post Facto Clause even though the Sentencing Guidelines had been rendered advisory, *see United States v. Booker*, 543 U.S. 220 (2005). *United States v. Wetherald*, 636 F.3d 1315, 1320–22 (11th Cir. 2011). As we explained in *Wetherald*, "the application of the correct Guidelines range [remains] of critical importance" under an advisory sentencing scheme, *id.* at 1322, because of the "simple reality" that the Guidelines "provide a starting point or 'anchor' for judges," *id*. at 1321 (quoting *United States v. Turner*, 548 F.3d 1094, 1099 (D.C. Cir. 2008), and "serve[] to cabin the potential sentence that may be imposed," *id.* Accordingly, we held that "we will . . . find an Ex Post Facto Clause violation when a district judge's selection of a Guidelines range in effect at the time of sentencing rather than that at the time of the offense results in a substantial risk of harsher punishment." *Id.* at 1322. Even so, we concluded that the failure of the district court to apply "the more lenient Guidelines sentence in effect at the time of [Wetherald's] offense" did not entitle him to relief on direct appeal because he could not "show a substantial risk that the application of the [newer] Guidelines resulted in the imposition of a harsher

9

sentence" when the district court stated that it would have imposed the same sentence under either version of the guidelines. *Id.* at 1323–24.

Bates's trial counsel performed deficiently by failing to object to the use of the 2011 guideline as violative of the Ex Post Facto Clause, particularly when the district court asked counsel how to sidestep applying the newer guideline. The application of the newer guideline plainly constituted "an Ex Post Facto Clause violation . . . [that] result[ed] in a substantial risk of harsher punishment" than what Bates faced when her offense ended in 2007. *See id.* at 1322. The district court increased Bates's offense level by four levels based on its determination that her offense involved more than 50 victims. *See* U.S.S.G. § 2B1.1(b)(2)(B). Using the 2011 guidelines, which expanded the definition of victim to include any person whose means of identification was used unlawfully or without authority, *id.* § 2B1.1 cmt. n.4(E) (Nov. 2011), the district court counted all 54 persons whose identification Bates stole, which resulted in a total offense level of 27. But under the commentary to the 2007 guidelines, which required that a person suffer a pecuniary loss, U.S.S.G. § 2B1.1 cmt. n.1 (Nov. 2007), Bates's victims included only the 46 individuals whose personal information she used to claim tax refunds and the two entities that incurred losses because of her offense. Had the district court applied the 2007 guideline, the government concedes, Bates would have received a two-level enhancement for an offense that involved more than 10, but

10

less than 50 victims, *id.* § 2B1.1(b)(2)(A), (B), which would have produced a total offense level of 25. Counsel's failure to object to the miscalculation of Bates's offense level was an error sufficiently serious to label him as "not functioning as the 'counsel' guaranteed [Bates] by the Sixth Amendment." *See Strickland*, 466 U.S. at 687.

Our decision turns on whether Bates can establish that her counsel's error affected her substantial rights. "Errors do affect a substantial right of a party if they have a 'substantial influence' on the outcome of a case or leave 'grave doubt' as to whether they affected the outcome of a case." *Turner*, 474 F.3d at 1276 (quoting *United States v. Frazier*, 387 F.3d 1244, 1268 n.20 (11th Cir. 2004) (*en banc*)). We have held that the miscalculation of a defendant's offense level, which resulted in a greater sentencing range than he otherwise would have faced, affected his substantial rights and entitled him to resentencing. *Bennett*, 472 F.3d at 834. Although Bennett's sentence fell within the corrected guideline range, we concluded that the miscalculation affected his substantial rights because the district court had expressed a desire to impose a sentence "toward the low end" of Bennett's guideline range. *Id.*

The United States Supreme Court held recently in *Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016), that "a defendant sentenced under an incorrect Guidelines range . . . [can] rely on that fact to show a reasonable

11

probability that the district court would have imposed a different sentence under the correct range" so as "to establish an effect on substantial rights." *Id.* at 1349. Based on the same concerns we identified in *Wetherald*, 636 F.3d at 1321–22, about the significant role the Guidelines play, *Molina-Martinez*, 136 S. Ct. at 1345–46, 1349, and the inability of some "defendant[s] [to find] evidence of the Guidelines' influence beyond the sentence itself," *id.* at 1347, the Supreme Court concluded that defendants "who [have] shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range [have] demonstrated a reasonable probability of a different outcome" under Federal Rule of Criminal Procedure 52(b), *id.* at 1346. "There may be instances when," the Court acknowledged, "despite application of an erroneous Guideline range, a reasonable probability of prejudice does not exist" to substantiate a claim for relief because the record establishes that "the district court thought the sentence it chose was appropriate irrespective of the Guidelines range." *Id.* at 1346–47. Then again, if "the record is silent as to what the district court might have done had it considered the correct Guidelines range," the Court explained, "the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights." *Id.* at 1347.

The Supreme Court concluded that the miscalculation of Molina-Martinez's sentencing range affected his substantial rights. *Id.* at 1347–48. The district court,

without stating anything "specific about . . . it[s] chose[n] . . . sentence," adopted an erroneous calculation of Molina-Martinez's criminal history level and imposed a sentence that was at the low end of the sentencing range, but that would have been in the middle of the sentencing range, had it been calculated correctly. *Id.* Based on those facts, the Supreme Court decided that "there [was] at least a reasonable probability that the District Court would have imposed a different sentence had it known [a shorter sentence] was in fact the lowest sentence the Commission deemed appropriate," *id.* at 1348, and that Molina-Martinez was entitled to a new sentencing hearing.

In the light of *Molina-Martinez* and *Bennett*, we conclude that trial counsel's deficient performance affected Bates's substantial rights because there was a reasonable probability that, had her counsel objected, she would have received a different sentence. The district court remarked that it could "see giving [Bates] a sentence at the bottom of the guidelines" and it considered Bates's request for a downward variance. The district court obtained a recommendation from Bates's probation officer to impose a sentence at the low end of the guideline range and weighed the reasons underlying the recommendation. With this information in hand, the district court sentenced Bates to 70 months, which was "the lowest sentence within what [it] believed to be the applicable range." *See id.* at 1347. Under the 2011 guideline, Bates received a four-level enhancement, which

13

produced a sentencing range between 70 and 87 months. Had Bates received only the two-level enhancement applicable under the 2007 guideline, her sentencing range would have been 57 to 71 months. Based on the opinion expressed by the district court and its decision to impose a sentence at the low end of the incorrect guideline range, there is a reasonable probability that it would have imposed a lower sentence had it used the correct sentencing range. *See Bennett*, 472 F.3d at 834. Trial counsel's failure to object to the application of the 2011 guideline affected Bates's substantial rights.

The district court should have granted Bates's motion to vacate her sentence based on the ineffectiveness of her trial counsel. As conceded by the government, trial counsel performed deficiently by failing to object to the four-level enhancement on the ground it violated the Ex Post Facto Clause. And Bates was prejudiced by her counsel's deficient performance because there is a reasonable probability that, but for the failure to object, the district court would have sentenced Bates differently. Bates is entitled to be resentenced using the correct total offense level of 25, which results from applying a two-level enhancement for having more than 10 and less than 50 victims who suffered a pecuniary loss, *see* U.S.S.G. § 2B1.1(b)(2)(A), (b)(2)(B) & cmt. n.1 (Nov. 2007), and the corresponding advisory sentencing range of 57 to 71 months of imprisonment.

## IV. CONCLUSION

We **VACATE** the order denying Bates's motion to vacate her sentence, and we **REMAND** with instructions to resentence Bates using the correct total offense level of 25 and the corresponding sentencing range of 57 to 71 months of imprisonment.

**VACATED AND REMANDED.**