[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 13, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15376

_____

D. C. Docket No. 05-00008-CR-WTM-4

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

CARL BENNETT,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(December 13, 2006)**

Before BLACK and HULL, Circuit Judges, and CONWAY,[*] District Judge.

PER CURIAM:

_____

[*]The Honorable Anne C. Conway, U.S. District Judge for the Middle District of Florida, sitting by designation.

Defendant-Appellant Carl Bennett appeals his 220-month sentence imposed following his guilty plea to possession of a firearm by a convicted felon and armed career criminal, 18 U.S.C. §§ 922(g)(1), 924(e). On appeal, Bennett contends that the district court erred in classifying him as an armed career criminal under 18 U.S.C. § 924(e), the Armed Career Criminal Act (ACCA), based on information contained in his Presentence Investigation Report (PSI). Bennett also maintains that the district court erred in sentencing him based on a total offense level of 32 under the United States Sentencing Guidelines (U.S.S.G.). We determine that the district court did not err in classifying Bennett as an armed career criminal, but did err in calculating a total offense level of 32.

## I. BACKGROUND

According to Bennett's PSI, on June 7 2004, Bennett was stopped by police officers while he was driving a car that belonged to another individual. The police officers found a shotgun in the trunk of the car. The car also contained household goods and electronic equipment that had been burgled from a residence. Steven Worriels, a passenger in the car, implicated Bennett in the burglary, but Bennett denied his involvement.

A. *Indictment*

On February 5, 2005, Bennett was indicted for possession of a firearm by a

convicted felon and armed career criminal, in violation of 18 U.S.C. §§ 922(g)(1), 924(e). The indictment charged that Bennett had been convicted of several felonies: two counts of burglary, both occuring on June 2, 1984, for which Bennett was sentenced to ten years; burglary, occurring on September 18, 1983, and burglary, occurring on February 15, 1984, for which Bennett was sentenced to ten years; burglary, occurring on October 28, 1988, for which he was sentenced to ten years; and burglary, possession of tools for the commission of a crime, and obstruction of justice, occurring on November 12, 1991, for which he was sentenced to fifteen years, five years, and five years, all concurrent.

B. *Plea Colloquy*

At the plea colloquy before the district judge, Bennett had an opportunity to challenge his prior convictions as set forth in the indictment. Not only did Bennett fail to object to the convictions, but he expressly admitted them, as the following colloquy demonstrates:

> Q      Have you read the indictment and gone over the charges in the indictment with your lawyer?
>
> A      Yes, sir.
>
> Q      In this case, Mr. Bennett, you are charged in this one-count indictment, and the indictment charges that on or about June 7, 2004, in Chatham County within the Southern District of Georgia, that you, who before that time had been convicted of felonies, offenses punishable by imprisonment for more than one year; and that is, the

3

felony offense of burglary, two counts, both offenses occurring June 2, 1984, for which you were sentenced to ten years with four years suspended in the Superior Court of Chatham County, Georgia on August 27, 1984; also, the felony offense of burglary occurring September 18, 1983, and burglary occurring February 15, 1984, for which you were sentenced to ten years with four years suspended in the Superior Court of Chatham County, Georgia October 19, 1984; also, the felony offense of burglary occurring October 28, 1988 for which you were sentenced to ten years in the Superior Court of Chatham County, Georgia on May 30, 1989; and the offense of burglary, possession of tools for the commission of a crime and obstruction of justice occurring November 12, 1991, for which you were sentenced to 15 years and five years, all concurrent, in the Superior Court of Chatham County, Georgia on May 8, 1992, that you did knowingly possess in and affecting interstate commerce a firearm; that is, a Stevens Model 6712 .12 gauge shotgun, and it gives the serial number, which before that time had been transported in interstate or foreign commerce, in violation of 18 United States Code, Sections 922(g)(1) and 924(e)[.]

And that is what you are charged with in the indictment that you are pleading guilty to today, Mr. Bennett. Do you understand that?

A     Yes.

Bennett's attorney, Christian Steinmetz, stated that Bennett would stipulate that he was a convicted felon who knowingly possessed a firearm. However, Bennett's attorney stated that he and his client wished to preserve an objection to the classification of Bennett's prior convictions as violent felonies for the sentencing hearing. The district judge initially explained that Bennett could challenge a host of issues at sentencing, including whether Bennett's prior

4

convictions were violent felonies. However, the district judge then made it clear that by pleading guilty, Bennett was admitting that he had three prior violent felonies. The district court stated: "But what he's pleading guilty to today is that he is a convicted felon; that he knowingly possessed a firearm that had been used in foreign or interstate commerce; and that he had three–at least three prior felony convictions." Mr. Steinmetz then replied: "As listed in 924(e)." The district court responded: "Which says that he had three previous felony convictions of violence and drug distribution. And those are the elements that the government had to prove. And if the government cannot prove those elements, then he would not be authorized to be found guilty in this case." The court further asked if Bennett was prepared to admit that he had committed three prior violent felony convictions, and Bennett admitted that he had at least three violent felonies, as follows:

> Q     Now, if [Bennett]'s not prepared this morning to admit that he <u>had three prior felony convictions that constituted violent convictions</u>, and the law is clear, in my opinion, that a burglary, whether it be a residential burglary or a commercial burglary, but particularly residential burglary, is a violent felony under federal law and under the sentencing guidelines. And if Mr. Bennett is not prepared to admit that on the record at sentencing (sic) today, then we're wasting our time here and we'll come back on Monday.
>
> MR. STEINMETZ: Your Honor, I think Mr. Bennett is and I'll ask him–
>
> THE COURT: – Well, I don't want you to tell me. I want Mr. Bennett to tell me that. Now, if you and Mr. Bennett need some more

time to talk, I'll be glad to give you that time. But unless he is prepared to admit the elements of the crime that he is charged with and that he is pleading guilty to today, then I am not going to go forward with this guilty plea, and I'm not going to play ring around the rosy here or split hairs.

MR. STEINMETZ: I believe Mr. Bennett is ready to go forward.

[Note: Counsel and defendant confer off the record.]

Q       All right, Mr. Bennett, do you understand the charges against you that I have explained to you, and understand the charges against you in the indictment, and do you understand the elements of the offense that I've described to you and that you're pleading guilty to today?

A       Yes, sir.

Q       And do you understand that part of those elements of the offense is that you are pleading guilty to having been previously convicted– as one of those elements that you previously committed at least three violent felonies?

A       Yes, Your Honor. (emphasis added).

After Bennett's admission to having at least three prior violent felony convictions, the district judge informed Bennett of the maximum penalties Bennett would face if he pled guilty. Bennett acknowledged that he understood the penalties and entered his guilty plea.

C. *Presentence Investigation Report*

Following Bennett's conviction, the United Stated Probation Office prepared

6

Bennett's PSI, which listed his prior convictions for burglaries of commercial or residential buildings and classified Bennett as an armed career criminal under § 924(e). As to the two June 2, 1984 burglaries listed in the indictment, the PSI stated that police records revealed these were "two commercial burglaries involv[ing] the theft of change from a Car Park and food items from Stand N'Snack, both of which were Savannah businesses." As to the September 18, 1983 burglary in the indictment, the PSI stated that police records showed Bennett "entered a closed Radio Shack store and stole an electric typewriter and a computer having a combined value of approximately $1400." As to the February 15, 1984 burglary in the indictment, the PSI stated that police records showed Bennett burglarized two Savannah businesses, Ocean Chemical and Metal Crafts, Inc. As to the October 28, 1988 burglary in the indictment, the PSI stated that "court documents reveal that the defendant forcefully entered the residence of Cynthia Cooper, Savannah, on October 28, 1988." As to the November 12, 1991 burglary in the indictment, the PSI stated that "court records reveal that the offense involved the defendant's burglary of the residence of Glendora Baldwin, Savannah, on November 12, 1991."

In the PSI, the probation officer recommended enhancing the base offense level to 34 because of Bennett's status as an armed career criminal and because the

firearm found by the police officers was possessed by Bennett in connection with a crime of violence (burglary of the residence).

Bennett filed written objections to the PSI. Specifically, Bennett objected to being characterized as an armed career criminal. Bennett contended that, even though he pled guilty to several charges of burglary, his prior crimes did not qualify as predicate offenses under § 924(e) of the ACCA. In making this objection, Bennett did not object to the underlying facts of his prior convictions as set forth in the court documents referred to in the PSI.

However, Bennett objected to all references to police reports in the descriptions of his prior burglary convictions. Bennett contended that, under Shepard, the sentencing court is precluded from considering such material in determining whether Bennett's prior offenses are within the scope of the ACCA.

Further, Bennett objected to the PSI's proposed offense level, arguing that his possession of the firearm was not "in connection with" another felony. Bennett contended that because he had neither pled guilty nor been adjudicated guilty of the burglary in question, the sentencing court could not enhance his offense level on this basis.

In the addendum to the PSI, the probation officer responded to Bennett's objections. The officer first noted that Bennett knowingly pled guilty to both

possession of a firearm by a convicted felon under § 922(g) and to being an armed career criminal under § 924(e). The probation officer then stated that the ACCA requires that a defendant have three prior convictions for a violent felony or serious drug offense. The probation officer explained that burglary is a violent felony under § 924(e)(2)(B)(ii) and concluded that, since Bennett had five previous convictions for burglary, the ACCA's requirement of three violent felony convictions was amply satisfied.

Regarding the references to police reports in the PSI and Bennett's Shepard objection, the probation officer stated that information from police reports was included to assist the sentencing court in understanding the details of the prior convictions. The probation officer clarified that the facts of Bennett's prior convictions cited in the PSI were derived from court documents and were only echoed by the police reports.

Lastly, in response to Bennett's objection to the proposed base offense level, the probation officer stated that the firearm recovered from Bennett was stolen from the burglarized residence earlier that day and there was ample evidence that Bennett was involved in the burglary.

D.  *Sentencing Memorandum*

Bennett's counsel also filed a Sentencing Memorandum, in which he argued that Bennett should not be sentenced as an armed career criminal because his burglaries did not involve violence to people.  In the Sentencing Memorandum, Bennett's counsel acknowledged that Bennett had "3 to 4 burglaries on record," but stated that Bennett "is not the guy that Congress had in mind when it enacted the Armed Career Criminal Act."  Again, Bennett did not contest that his prior burglary convictions were for burglaries of commercial or residential buildings.

E.  *Sentencing Hearing*

At the sentencing hearing, the district court asked Bennett whether he had any objections to the factual accuracy of the PSI.  Bennett's counsel did not raise any objections in response.  The district court acknowledged the objection Bennett's counsel raised to the PSI regarding Bennett's classification as an armed career criminal.  However, the district court stated that it did not understand counsel's argument given Bennett's documented criminal history of numerous prior burglaries.  In responding to the district court, Bennett's counsel admitted that Bennett had prior burglary convictions, but he argued that because no persons had been in the buildings Bennett burglarized, Bennett's burglaries did not involve any violence to human beings, stating:

10

Well, Your Honor, I will acknowledge that the statute, 924(e), explicitly provides burglary, absolutely, and Mr. Bennett has at least three, if not four, burglary convictions on his record. The reason that I put that in there is, first of all, Your Honor, if I don't put it in there, I don't preserve the right to argue it on appeal. The second reason that I put it in there is that what we would submit is, while the statute does classify burglary as a crime of violence, or as a violent crime – there is a distinction under the guidelines - none of Mr. Bennett's burglaries involved any violence as to human beings, other than to the property of human beings. They did not involve busting in while somebody was in their house. I mean, he went into houses when people weren't there, took their stuff, you know, and left. And yes, Your Honor, I mean, they're burglaries, clearly, but in that – the scope of a lot of our argument has been that the guidelines, if applied as the probation officer said, are more than – they're an extreme. This was part of that argument showing that he is not your typical armed career criminal in the sense that he does not have a violent history.

Bennett's counsel also admitted that burglary is a crime under the ACCA: "[b]ut what I'm saying is, you've got all these crimes under the ACCA, all these crimes, and I think that the spectrum, if you look at the spectrum of crimes, I do not believe that burglary is nearly as serious as a lot of the others."

After rejecting Bennett's argument, the court stated: "[t]he Court adopts the factual statements contained in the presentence investigation report as to which there are no objections. As to the controverted factual statements regarding the

11

identifying data,[1] the Court adopts the position of the probation office as stated in the addendum to the presentence investigation report."

In determining Bennett's sentence, the district court disagreed with the probation officer's recommended base level enhancement. The district court found by a preponderance of the evidence that Bennett's possession of the firearm was not in connection with a violent felony. After some confusion about the correct base offense level, the district court arrived at a total offense level of 32 (a base offense level of 34 with a two-level acceptance of responsibility reduction) with a range of 210 to 263 months' imprisonment. The district court then sentenced Bennett to 220 months, stating that "a sentence not at the low end, but toward the low end of the Guidelines appears to be appropriate."[2]

## II.  STANDARD OF REVIEW

Assuming that Bennett properly preserved his objection regarding his classification as an armed career criminal, we review <u>de novo</u> the district court's determination, based on information in Bennett's PSI, that Bennett's prior

---

[1]The court's reference to "identifying data" relates to Bennett's first two objections to the PSI which concerned the inclusion in the PSI of certain aliases and alias social security numbers. In the addendum to the PSI, the probation officer conceded that he found no evidence of Bennett using any of these aliases in connection with criminal activity.

[2]The district court also stated that the 220 months' imprisonment was to be served concurrently with the revoked state parole term that the defendant is currently serving.

convictions were "violent felonies" under the ACCA. United States v. Day, 465 F.3d 1262, 1264 (11th Cir. 2006).

With respect to Bennett's argument about his total offense level being 31 rather than 32, we review objections to sentencing calculation issues raised for the first time on appeal for plain error. United States v. Harness, 180 F.3d 1232, 1234 (11th Cir. 1999). This standard requires that there be error, that the error be plain, and that the error affect a substantial right. Id. A substantial right is affected if the appealing party can show that there is a reasonable probability that there would have been a different result had there been no error. United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir.), cert. denied, 545 U.S. 1127, 125 S. Ct. 2935, 162 L.Ed.2d 866 (2005). If these three conditions are met, then we may exercise our discretion to notice the forfeited error if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id.

### III.  DISCUSSION

A.  *Classification as an Armed Career Criminal*

Bennett first argues the district court erred in determining, based on facts contained in his PSI, that his prior burglary convictions were violent felonies under the ACCA. Bennett contends that, because Georgia's burglary statute is non-generic, the district court was required under Shepard v. United States, 544 U.S.

13

13, 125 S. Ct. 1254, 161 L.E.2d 205 (2005) to find that his prior convictions contained all of the elements of generic burglary using only appropriate court records from those prior convictions and that the district court failed to do so. Bennett asserts that the district court relied only on his PSI in making the determination and that the PSI is not a permissible source under Shepard unless the defendant has admitted the facts therein, which Bennett asserts on appeal he did not do.

The ACCA provides for an increased sentence for a defendant who is convicted under 18 U.S.C. § 922(g)(1) and has three prior violent felony convictions. See 18 U.S.C. § 924(e). Section 924(e) identifies burglary as a violent felony, but only in its generic sense: an unlawful entry into a building or other structure with the intent to commit a crime. Taylor v. United States, 495 U.S. 575, 599, 110 S.Ct. 2143, 2158, 109 L.Ed. 607 (1990). A conviction constitutes "burglary" for purposes of § 924(e) if either the statutory definition of the offense substantially corresponds to generic burglary or there is a finding of fact that a particular crime contained all the elements of generic burglary. Id. at 602, 110 S.Ct. at 2160. For a guilty plea under a non-generic burglary statute, this determination is generally limited to the terms of the charging document, jury instructions, a bench-trial judge's findings of fact, plea agreement, transcript of the

plea colloquy, or other comparable judicial records.  Shepard, 544 U.S. at 20-21, 125 S.Ct. at 1259–60; United States v. Greer, 440 F.3d 1267, 1275 (11th Cir. 2006).  Georgia's burglary statute is non-generic because it encompasses unlawful entry not just into buildings, but also into vehicles, railroad cars, and watercraft. See United States v. Adams, 91 F.3d 114, 115 (11th Cir. 1996).

A sentencing court's findings of fact may be based on undisputed statements in the PSI.  United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989).  Where a defendant objects to the factual basis of his sentence, the government has the burden of establishing the disputed fact.  United States v. Sepulveda, 115 F.3d 882, 890 (11th Cir. 1997).  However, challenges to the facts contained in the PSI must be asserted with specificity and clarity.  See United States v. Aleman, 832 F.2d 142, 145 (11th Cir. 1987).  Otherwise, the objection is waived.  See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005); United States v. Norris, 50 F.3d 959, 962 (11th Cir. 1995).

Bennett's argument about his classification as an armed career criminal is meritless for two reasons.  First, Bennett's indictment charged him with having at least three prior felony burglaries and with being an armed career criminal in violation of § 924(e).  At Bennett's plea colloquy, the district judge thoroughly explained to Bennett the consequences of entering a guilty plea, particularly that a

15

guilty plea included an admission to his having three prior violent felony convictions. The district judge also apprised Bennett of the maximum penalties that could result from his guilty plea. After the district judge's thorough instructions, Bennett admitted that he had been convicted of three prior violent felonies. This alone authorized the district court to sentence Bennett as an armed career criminal under § 924(e).

Second, the PSI, together with the addendum to the PSI, indicated that court documents of Bennett's prior burglaries showed that his burglaries were of either residential or commercial buildings. In response to the PSI, Bennett never disputed that the court documents showed these facts. While Bennett objected to the probation officer's use of police reports, as non-Shepard materials, in preparation of the PSI, Bennett did not object to the underlying facts of his prior convictions as set forth in the court documents referenced in the PSI.

In fact, the government had provided certified copies of the relevant court documents–namely, four burglary indictments describing the offense conduct and the corresponding convictions–to Bennett during discovery.[3] The government had

---

[3] The court documents provided to Bennett included the indictments and convictions for the June 2, 1984 burglaries of Car Park and Stand N' Snack, two Savannah businesses; the February 15, 1983 burglaries of Ocean Chemical Co., Inc. and Metal Crafts, Inc., two Savannah businesses; the October 28, 1988 burglary of Cynthia Cooper's residence; and the November 12, 1991 burglary of Glendora Baldwin's residence.

16

also provided the four burglary indictments and corresponding convictions to the probation officer for his use in preparing Bennett's PSI. These court documents indicated, consistent with the descriptions in the PSI, that at least four of Bennett's prior burglary convictions were for burglaries of either residential or commercial buildings. Bennett never disputed that he had been convicted of these four burglaries. Additionally, at no point did Bennett object to the court documents being referenced in the PSI, nor did he object to the factual representations in the PSI and addendum to the PSI as to what the court documents showed about his burglaries.

For the first time on appeal, Bennett argues that the district court should not have accepted the probation officer's statement that he derived the information about Bennett's prior convictions from court documents. Bennett contends that the probation officer should have referred to the specific court documents (such as the charging documents, written plea agreements, or transcripts of plea colloquy) on which he relied in concluding that Bennett's prior burglary convictions constituted violent felonies under the ACCA. Bennett had an opportunity to make this objection to the sentencing court, and he failed to do so. Therefore, Bennett waived this argument.

Instead, at the sentencing hearing, Bennett's counsel clarified that the basis for Bennett's objection to the classification of his prior burglary convictions as violent felonies rested not on a dispute regarding the facts of those convictions, but instead on the argument that Bennett's burglaries were not serious enough to warrant the classification. Bennett's counsel even admitted: "[Bennett] went into houses when people weren't there, took their stuff, you know, and left."

Bennett failed to object to the facts of his prior convictions as contained in his PSI and addendum to the PSI despite several opportunities to do so; thus, he is deemed to have admitted those facts. See United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006) (stating "[i]t is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes"); United States v. Williams, 438 F.3d 1272, 1274 (11th Cir. 2006) (stating that the defendant's "failure to contest the 37 grams imputed in the PSI constituted an admission of that quantity"); United States v. Burge, 407 F.3d 1183, 1191 (11th Cir. 2005) (stating that the defendant "waived his objections to the factual statements about his relevant conduct in the presentence report and, therefore, admitted the facts in that report"); United States v. Shelton, 400 F.3d at 1328-30. For either of these reasons, the district court did not err in relying on the undisputed facts in Bennett's PSI to determine that his prior convictions were

18

violent felonies under the ACCA and, therefore, that he was an armed career criminal.

B. *Sentencing Offense Level*

The base offense level for an armed career criminal sentenced pursuant to U.S.S.G. § 4B1.4(b)(3) is 34 if the defendant used or possessed the firearm in question in connection with, inter alia, a crime of violence. U.S.S.G. § 4B1.4(b)(3)(A). Otherwise, the appropriate base offense level for an armed career criminal is 33. U.S.S.G. § 4B1.4(b)(3)(B). Acceptance of responsibility reductions are then applied to these offense levels. U.S.S.G. § 4B1.4(b)(3).

At sentencing, the district court found by a preponderance of the evidence that Bennett's possession of the firearm was not in connection with a violent felony. The government did not cross-appeal that finding. Thus, Bennett's base offense level should have been 33, and his total offense level should have been 31 after his assigned two-level acceptance of responsibility reduction. However, the district court miscalculated Bennett's total offense level as 32. This miscalculation of the offense level was plain error.

A total offense level of 32 produced a Guidelines range of 210 to 262 months. Had Bennett been sentenced at the correct total offense level of 31, the Guidelines range would have been 188 to 235 months. More importantly, the

district judge expressly indicated a desire to impose a sentence near the low end of the sentencing Guidelines range. Bennett's sentence of 220 months' imprisonment is near the low end of the Guidelines range for a total offense level of 32, but is not near the low end of the Guidelines range for a total offense level of 31. Because of the district court's express comments, there is a reasonable probability that the district court would have sentenced Bennett differently had it used the correct total offense level of 31. The offense level miscalculation therefore affected Bennett's substantial rights. Under these circumstances, Bennett has shown that the plain error that substantially affected his rights also seriously affected the fairness, integrity, or public reputation of the judicial proceedings in this case. See United States v. Thompson, 422 F.3d 1285, 1301-02 (11th Cir. 2005); United States v. Henderson, 409 F.3d 1293, 1308 (11th Cir. 2005); United States v. Dacus, 408 F.3d 686, 689 (11th Cir. 2005); United States v. Martinez, 407 F.3d 1170, 1174 (11th Cir. 2005); United States v. Shelton, 400 F.3d 1325, 1333–34 (11th Cir. 2005). Therefore, the district court plainly erred in using a total offense level of 32 instead of a total offense level of 31.

## IV. CONCLUSION

The district court did not err in determining that Bennett was an armed career criminal, and we affirm that determination. However, the district court did

plainly err in using a total offense level of 32 to calculate the applicable Guidelines range. Therefore, we vacate and remand for the limited purpose of resentencing at the correct total offense level of 31 and the corresponding advisory Guidelines range of 188 to 235 months. On remand, the district court shall consider Bennett's correct advisory Guidelines range of 188 to 235 months' imprisonment and the 8 U.S.C. § 3553(a) factors in determining a reasonable sentence.[4]

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**

---

[4]As this is a limited remand, the parties may not reargue issues already or necessarily decided during the first sentencing that either have been affirmed in this appeal or could have been but were not raised during this appeal. See United States v. Davis, 329 F.3d 1250, 1252 (11th Cir. 2003) (explaining that when the appellate court issues a limited mandate, "the trial court is restricted in the range of issues it may consider on remand").