[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13743
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-00090-KD-MU-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RASSAN M. TARABEIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(January 13, 2020)

Before MARTIN, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

Rassan Tarabein appeals his $15,010,682 restitution calculation after he pleaded guilty to one count of health care fraud, in violation of 18 U.S.C. § 1347, and one count of unlawful distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1).  On appeal, he argues that the district court plainly erred by not making specific factual findings as to the calculation of restitution during the sentencing hearing.  After a thorough review of the record, we affirm.

## I. Background

Rassan Tarabein was a licensed neurologist who provided services related to pain management and neurology.  For these services, he billed various health care benefit programs, including government and private insurers.  From around 2004 to May 2017, Tarabein orchestrated a scheme to defraud the health care benefit programs by billing the programs for medically unnecessary tests and procedures.  Additionally, Tarabein distributed and dispensed controlled substances to patients for no legitimate medical purpose and outside the usual course of professional practice.

A federal grand jury indicted Tarabein with two counts of heath care fraud, in violation of 18 U.S.C. § 1347, ten counts of false statements relating to health care matters, in violation of 18 U.S.C. § 1035, one count of false statements to a federal agency, in violation of 18 U.S.C. § 1001, four counts of unlawful distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and

2

four counts of engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957.

Tarabein pleaded guilty to one count of health care fraud and one count of unlawful distribution of controlled substances pursuant to a written plea agreement. In the penalties section, the plea agreement contemplated "such restitution as may be ordered by the court." The agreement further noted that under 18 U.S.C §§ 3556 and 3663(A) restitution was mandatory, and that "the defendant agrees to make full restitution in an amount to be determined by the Court at sentencing." The government agreed to recommend a 60-month sentence. Additionally, the plea agreement contained an appeal waiver, which provided that:

> As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings.

The agreement further provided that the only exceptions to the appeal waiver were for (1) any sentence imposed in excess of the statutory maximum, (2) any sentence which constitutes an upward departure or variance from the advisory guideline range, or (3) a claim of ineffective assistance of counsel in a direct appeal or § 2255 motion.

3

At the plea hearing, the district court then spoke specifically about the appeal waiver. The court asked:

> In the plea agreement, you are waiving your right to appeal the entry of this guilty plea as well as the sentence that I give you. You can't file a direct appeal or a collateral appeal. Do you understand that? . . . The only exception is if I go above the guidelines, which I won't do, if I go above the statutory maximum, which I won't do, or if you receive ineffective assistance of counsel. Those would be the only reasons you could appeal the sentence or this conviction. Do you understand?

In response to both questions, Tarabein answered affirmatively that he understood the terms of the appeal waiver.

The probation department prepared an initial presentence investigation report ("PSI") prior to Tarabein's sentencing. The probation officer noted that the Mandatory Victim Restitution Act of 1996 applied to Tarabein's offense and adopted the loss calculations of a special agent for the government, which then formed the basis for the restitution amount. The report indicated that Tarabein was accountable for $12,231,301 of illicit payments that he received from the health care organizations.

Tarabein initially objected to the amount of restitution listed in the PSI. The government also objected but argued that the total restitution amount should be $14,526,122.63 because the figure listed in the PSI only included restitution for fraudulent procedures when it should have included fraudulent prescriptions as

4

well.  Tarabein then withdrew his objections to the PSI and "adopt[ed] the application and determination of sentencing factors and the guidelines calculations contained therein."

The final PSI revised the total restitution amount owed, determining that the final amount was $15,010,682.  This number included $12,715,860 of fraudulent procedures and $2,524,794 of fraudulent schedule II prescriptions.  The total did not include the roughly four million dollars of fraudulent non-schedule II prescriptions.  However, the total did give Tarabein credit for refunds in the amount of $229,973.

Prior to sentencing, the government filed a supplemental memorandum detailing how an FBI special agent had calculated the loss amount and restitution amount associated with Tarabein's health care fraud scheme.[1]  The document provided charts, explanations, and specifics on how the special agent calculated the loss amount for each insurance company fraudulently billed.

At the sentencing hearing, the district court stated that the probation office had determined Tarabein's total offense level to be 33 with criminal history

---

[1] The document indicated that, in general, the special agent would take a random sampling of patients and calculate loss for them before averaging that number and multiplying it by the number of patients with the same procedures done or prescriptions given across Tarabein's practice.  To make the calculations for individual patient records, the government agent consulted with several experts, including two medical doctors and a medical billing code expert.  The agent also interviewed several employees and patients to understand the scope of the fraudulent prescription problem.

5

category I, making the resulting guideline range 135 to 168 months' imprisonment.

After hearing from five victims, a character witness for the defendant, character

letters, and Tarabein's own statement, as well as arguments from both parties, the

court sentenced Tarabein to 60-months' imprisonment, in accordance with the plea

agreement, 1 year of supervised release, and ordered restitution in the amount of

$15,010,682.  The court ordered Tarabein to make restitution payments of at least

$500 a month.  After the district court imposed the sentence, it asked for any

objections.  Tarabein, through counsel, responded: "I don't have any objections,

your Honor."  The court also told Tarabein that he would be given credit for the

nearly $6,000,000.00 in restitution he had already paid.

On June 8, 2018—the same day as the sentencing hearing—Tarabein filed a

notice of non-appeal, stating that he had consulted with his attorney and he did not

wish to file an appeal.  The district court entered its final judgment in Tarabein's

criminal case on June 20, 2018.  In conjunction with the final judgment, the court

entered a statement of reasons which indicated the court "adopt[ed] the presentence

investigation report without change."  On August 29, 2018, Tarabein filed a *pro se*

notice of appeal.  In October 2018, his trial attorneys withdrew from his case.[2]

---

[2] We note that, because Tarabein was represented at the time he filed his pro se notice of appeal, we are entitled to ignore that filing.  *See Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 163 (2000) (holding there is no constitutional right to self-representation on direct appeal); *United States v. LaChance*, 817 F.2d 1491, 1498 (11th Cir. 1987)  ("It is the law of this circuit that the right to counsel and the right to proceed pro se exist

6

## II. Standard of Review

We review jurisdictional issues and the interpretation of federal rules of procedure *de novo*. *United States v. Lopez*, 562 F.3d 1309, 1311 (11th Cir. 2009). We review the legality of a restitution order *de novo*, and a factual finding regarding a specific amount of restitution for clear error. *United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010). However, objections or arguments that are not raised at sentencing are reviewed for plain error. *See United States v. Bennett*, 472 F.3d 825, 831 (11th Cir. 2006) (an argument regarding defendant's offense level was not raised before the district court and was thus subject to plain error review). Under plain error review, this Court may correct an error where "(1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." *United States v. Gresham*, 325 F.3d 1262, 1265 (11th Cir. 2003).

## III. Discussion

### A. We Need Not Decide the Issue of Timeliness

In a criminal case, a defendant's notice of appeal must be filed in the district court within fourteen days after entry of the judgment or order being appealed. Fed. R. App. P. 4(b)(1)(A)(i). A *pro se* prisoner's notice of appeal is deemed filed

---

in the alternative…."). However, given the posture of the case and the fact that the government has not objected, we will treat the notice as if it were proper for purposes of this decision.

7

on the date that he delivers it to prison authorities for mailing. Fed. R. App. P. 4(c)(1); *see also Daniels v. United States*, 809 F.3d 588, 589 (11th Cir. 2015).

Here, the notice of appeal is undisputedly untimely because Tarabein filed it 60 days after judgment was entered in his case. He now asks this court to excuse his untimeliness based on his counsel's alleged ineffectiveness in not filing the notice of appeal when instructed to by Tarabein.

The deadline in Rule 4(b) for a defendant to file a notice of appeal in a criminal case is not jurisdictional. *Lopez*, 562 F.3d at 1313. Instead, the filing deadline is considered a claims processing rule, and the government can waive an objection to an untimely notice of appeal in a criminal case. *Id.* at 1312–13. Nevertheless, if the government raises the issue of timeliness, then we "must apply the time limits of Rule 4(b)." *Id.* at 1313–14. Here, while the government did assert that we should find Tarabein's appeal time-barred if we did not consider the merits of his restitution argument, the government actually expressed a preference for a decision on the merits. While the government's position is not a true "waiver," we believe it is a distinguishing feature from the procedural posture in *Lopez* and thus permits a different outcome here.[3] Accordingly, we proceed to the merits of the appeal.

---

[3] Because we reach the merits of this appeal, we need not reach the issue of what effect, if any, a claim of ineffective assistance has on Rule 4(b)'s time requirements.

8

B.  Tarabein's Claim Fails on Plain Error Review[4]

Because Tarabein did not object to the amount of restitution at sentencing, his claim regarding the impropriety of the district court's methods must be reviewed for plain error.  *Bennett*, 472 F.3d at 831.  In plain error review, it is the defendant who bears the burden to show all four prongs of this demanding standard. *See United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003). Because we conclude that Tarabein has not met his burden to show the third prong, we need not address the others.  *See United States v. Curtis*, 400 F.3d 1334, 1335 (11th Cir. 2005) (choosing to dispose of the plain error review by only addressing the third prong).

The third prong of plain error review is that the error must "affect substantial rights" of the defendant.  Fed. R. Crim. P. 52.  For substantial rights to be affected, the error "must have been prejudicial," meaning it "affected the outcome of the district court proceedings."  *Olano*, 507 U.S. at 734.  We hold that any such error as to the restitution amount did not affect the outcome of the proceeding below.

First, the restitution amount was undisputed at the sentencing hearing.  We do not mean "undisputed" in the sense that Tarabein did not object—we mean that, after the government filed its supplemental memorandum clarifying how the

---

[4] As his claim fails on this ground, we do not need to address the issue of Tarabein's appeal waiver and whether it is applicable.

9

special agent, and by extension the probation officer, had reached the figures it did, Tarabein provided no alternative method on how to calculate restitution. Indeed, the record shows there was none. As noted above, Tarabein even withdrew his objection to the initial PSI after the government objected that the figure was too low under its agent's calculations. Rather, Tarabein, in a very general manner, questions the restitution award because it was not specifically calculated. But we have held that, because "the determination of the restitution amount is by nature an inexact science," a district court "may accept a 'reasonable estimate' of the loss based on the evidence presented." *United States v. Baldwin*, 774 F.3d 711, 728 (11th Cir. 2014) (quoting *United States v. Futrell*, 209 F.3d 1286, 1290 (11th Cir.2000)). Relying on estimates is especially reasonable in fraud cases, where the defendant's conduct produces "inevitable gaps in evidence." *Futrell*, 209 F.3d at 1292.

Second, the record demonstrates that the district court had ample reasons to rely on the amount in the PSI. The supplemental memorandum filed by the government prior to sentencing contained numerous charts, calculations, and consultations with non-government experts who reviewed the procedures Tarabein conducted and the medical records to give estimates of what percentage of Tarabein's billing was fraudulent. Further, as the government points out, the figures put forward by the government appear to be a conservative estimate of

Tarabein's fraud.  The supplemental memorandum states that the figures were calculated using the "most common procedures fraudulently billed by Tarabein" even though "there are other procedures and tests Tarabein was performing fraudulently."  And the figures only account for the years 2011 through 2016, even though Tarabein admitted to running this fraudulent scheme from 2004 to 2017.  Finally, the total amount in the PSI did not include the roughly four million dollars of fraudulent non-schedule II prescriptions that Tarabein submitted, another category of funds which he could have been required to pay in restitution.

Finally, we have upheld loss amount and restitution calculations based on methodology contained in the PSI before.  *See U.S. v. Bradley*, 644 F.3d 1213, 1293 (11th Cir. 2011) (finding no error because the Court adopted the PSI in full, which discussed the methodology relied on in calculating the amount of loss); *see also U.S. v. Dickerson*, 370 F.3d 1330 (11th Cir. 2004) (upholding a restitution amount based on methodology only contained in the PSI).  The PSI contained ample information about the methods Tarabein used to steal money, the manner in which the loss amounts were calculated by the government, and the calculations used to add the various loss amounts together for a total restitution amount.

For the reasons above, Tarabein has failed to meet his burden that any alleged error affected his substantial rights.

**AFFIRMED.**

11