[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-14122

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

NOE CUEVAS MOLINA,
a.k.a. Noe Cuevas,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cr-00379-SCB-AEP-1

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Noe Cuevas Molina appeals his total sentence of 168 months' imprisonment—a downward variance from the guideline range of 210 to 262 months.  The only issue before this Court is whether the sentence is substantively unreasonable.  Because we find that Cuevas Molina's sentence is substantively reasonable, we affirm.

## I.

Cuevas Molina and five co-defendants were charged in a superseding indictment with conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States (Count 1), and possession with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States (Count 2).  Cuevas Molina, alone, was also charged with failure to obey a lawful order by a law enforcement officer (Count 3).  He pled guilty to all three charges without a plea agreement.

Before sentencing, a probation officer prepared a presentence investigation report ("PSI"), which reported the following facts.  On November 18, 2021, law enforcement officers patrolling the eastern Pacific Ocean spotted a "go-fast vessel" about 250 miles south of Salina Cruz, Mexico.  A United States Coast Guard boarding team pursued the go-fast vessel, which appeared to be dead in

the water.  As the Coast Guard cutter approached, however, the occupants of the go-fast vessel revved their engines and sped away. The Coast Guard ordered the vessel to stop, but the master—later identified as Cuevas Molina—shook his head "no" and refused.  At some point during the twenty-minute pursuit that followed, Cuevas Molina made a satellite phone call.  One of the boarding-team officers tried to stop the go-fact vessel by pulling the kill switch with an aluminum boat hook, but one of the drug traffickers grabbed the hook away, broke it, and struck the officer's hand and head with it.  Finally, the go-fast vessel slowed down enough that the boarding team was able to assume control.

Upon the Coast Guard's boarding, Cuevas Molina identified himself as the master of the vessel and claimed Mexican nationality for both himself and the vessel.  Mexico, upon request from the United States, was unable to confirm or deny the nationality of the vessel, so the Coast Guard treated it as a stateless vessel subject to the jurisdiction of the United States.  Cuevas Molina confessed that the purpose of their sea voyage was to transport cocaine.  Indeed, during a search of the go-fast vessel, the Coast Guard boarding team found several fuel barrels and kilo-sized packages of cocaine, totaling approximately 1,294 kilograms.

When asked about his participation, Cuevas Molina told the probation officer that he committed his crimes because he wanted to buy his children a computer to use for their schoolwork, but he also insisted he was expecting to participate in a "rescue mission" and that he was "forced to participate."

The PSI grouped the three counts and calculated a base offense level of 38 pursuant to U.S.S.G. § 2D1.1(c)(1), which sets the base level for offenses involving at least 450 kilograms of cocaine. The PSI then applied a two-point enhancement because Cuevas Molina was the master of the vessel. The PSI did not recommend a two-point safety-valve reduction because Cuevas Molina had failed to complete a truthful debrief with the government, as required under U.S.S.G. § 5C1.2. Cuevas Molina's adjusted offense subtotal was therefore 40. The PSI then recommended that Cuevas Molina be credited all three acceptance-of-responsibility points, bringing his total offense level down to 37.

Based on an offense level of 37 and a criminal history category of I, Cuevas Molina's guideline range was 210 to 262 months imprisonment. The statutory maximum sentence was life. As factors potentially warranting a downward variance, the PSI identified Cuevas Molina's childhood poverty and his lack of education. Neither Cuevas Molina nor the government lodged any objections to the PSI.

Cuevas Molina filed a sentencing memorandum and motion for downward departure in which he conceded that he was the master of the vessel but nevertheless insisted he was just a "small pawn in the world of international trafficking of cocaine." He also argued that principles of parity suggested a significantly lower sentence because his co-conspirators had been sentenced to 96 and 108 months. Finally, Cuevas Molina argued that a guideline sentence was greater than necessary to satisfy the purposes of 18 U.S.C. §

3553(a). Cuevas Molina ultimately urged the district court to sentence him to the lowest statutorily permitted sentence, 120 months.

At sentencing, the district court confirmed that it had read the PSI, that the guideline range was 210 to 262 months imprisonment, and that there were no unresolved objections to either the application of the guidelines or the facts reported in the PSI. The district court also recounted its sentencing of the co-conspirators, recalling that four of them had been sentenced to 108 months and one had been sentenced to 97 months. As to those sentences, the district court explained that two of the co-conspirators had benefitted from U.S.S.G. § 5K1.1 motions and that the others received downward variances of at least two levels.

Cuevas Molina reiterated to the district court that he accepted responsibility, admitted that he was the master of the vessel, and had attempted to debrief with the government but was too fearful of the drug cartel to provide full and truthful information. Cuevas Molina, however, then suggested to the district court that one of his co-conspirators was actually the master. Cuevas Molina again asked for the statutory minimum sentence of 120 months, arguing that ten years would be sufficient, but no more than necessary, to punish him and to deter others.

The government, in response, urged the district court not to vary down any more than the two levels it had given to some of the co-conspirators. That two-level variance, the government suggested, could result in a 168-month sentence, which, while

significantly higher than the co-conspirators' sentences, appropriately reflected Cuevas Molina's role as master of the vessel and his failure to provide an honest and complete debrief.  Moreover, the government argued that it was appropriate for Cuevas Molina to be sentenced more harshly because he alone was found guilty of failing to heed the Coast Guard officers' instruction to stop, setting off the high-speed chase at sea.

The district court sentenced Cuevas Molina to 168 months' imprisonment for Counts 1 and 2 and 60 months' imprisonment for Count 3, all to be served concurrently, followed by 5 years of supervised release.  In pronouncing the sentence, the district court specifically noted that it had considered the advisory guidelines, the parties' arguments, and 18 U.S.C. §§ 3551 and 3553.  In varying down two levels, the district court explained that it did so both to prevent any disparity in sentencing and in light of Cuevas Molina's poverty, his desire to support his children, and his lack of education.  After explaining the variance, the district court noted that it found that this sentence was "sufficient, but not greater than necessary."  Before concluding the hearing, the district court asked Cuevas Molina if he was satisfied with his lawyer's representation, and he affirmed, "Yes, Your Honor.  Of course."

This timely appeal ensued.

## II.

When reviewing for substantive reasonableness, we consider the totality of the circumstances under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 51 (2007). The party challenging the sentence bears the burden of establishing that the sentence is unreasonable in light of the record and the factors found in 18 U.S.C. § 3553(a). *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

The district court abuses its discretion when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quoting *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc)). "[A] district court commits a clear error of judgment when it considers the proper factors but balances them unreasonably." *Id.* However, the district court does not have to give all the factors equal weight and is given discretion to attach great weight to one factor over another. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). The weight given to any § 3553(a) factor is left to the sound discretion of the district court, and we will not substitute our own judgment by reweighing the § 3553(a) factors. *United States v. Kuhlman*, 711 F.3d 1321, 1327 (11th Cir. 2013). While we do not apply a presumption of reasonableness to sentences within the guideline range, we ordinarily expect such a sentence to be reasonable. *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014). Thus, a sentence imposed well

below the guideline range is likewise an indicator of reasonableness. *Id.* A sentence that is well below the statutory maximum for the crime is also an indicator of a reasonable sentence. *United States v. Dougherty*, 754 F.3d 1353, 1364 (11th Cir. 2014).

Section 3553(a) requires that the district court "shall impose a sentence sufficient, but not greater than necessary" to: (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. § 3553(a)(2)(A)–(D). Additionally, the court must consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kinds of sentences available; (4) the guideline sentencing range; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been convicted of similar conduct; and (7) the need to provide restitution to any victims. *Id.* § 3553(a)(1), (3)–(7).

"A sentencing court's findings of fact may be based on undisputed statements in the PSI." *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006). A failure to object to allegations of fact in a PSI admits those facts for sentencing purposes. *Id.*

### III.

Cuevas Molina argues that his sentence is substantively unreasonable because it is "unreasonably punitive given the applicable 18 U.S.C. § 3553(a) factors, most notably the need to avoid unwarranted disparities in sentences among similarly situated defendants." We disagree.

We note, as a general matter, "that the district courts have institutional advantages in applying and weighing § 3553(a)'s factors in individual cases." *United States v. McQueen*, 727 F.3d 1144, 1156 (11th Cir. 2013). In light of that discretion, "it is only the rare sentence that will be substantively unreasonable." *Id.*

When considering a claim of unwarranted disparity, we first consider whether the defendant is similarly situated to the defendants to whom he compares himself. *United States v. Duperval*, 777 F.3d 1324, 1338 (11th Cir. 2015). Section 3553(a)(6) counsels that district courts should "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," but Cuevas Molina is not similarly situated to his co-defendants. Cuevas Molina identifies two key details that set him apart from his co-conspirators: the facts that he "was purportedly in charge of the vessel at issue [and] did not provide substantial assistance or fully debrief." Cuevas Molina downplays those two distinctions, describing his leadership role as "largely nominal" and justifying his failure to truthfully debrief based on fear of reprisal. We are not persuaded. The district court correctly determined that Cuevas Molina's conduct—and, as a result, his

culpability—differed from that of his co-conspirators in a way that warranted a harsher sentence. *See, e.g.*, *United States v. Cabezas-Montano*, 949 F.3d 567, 612 (11th Cir. 2020) (holding that a captain of a vessel containing drugs and a drug smuggler were not similarly situated and warranted disparate sentences); *United States v. Bergman*, 852 F.3d 1046, 1071 (11th Cir. 2017) (holding that criminal defendant who was more involved in a Medicare fraud scheme was more culpable than his co-defendant); *United States v. Moran*, 778 F.3d 942, 983 (11th Cir. 2015) (same); *see also United States v. McNair*, 605 F.3d 1152, 1231–32 (11th Cir. 2010) (explaining the differences between two co-defendants that warranted disparate sentences).

But even if Cuevas Molina had demonstrated a sentencing disparity, we conclude that he has failed to show that any such disparity would outweigh the remaining § 3553(a) factors, all of which the district court considered before imposing sentence. Finally, Cuevas Molina's 168-month sentence is far lower than either the statutory-maximum life sentence or his guideline range of 210 to 262 months. Both comparisons further indicate that the sentence is reasonable. *See Stanley*, 739 F.3d at 656; *Dougherty*, 754 F.3d at 1364.

For these reasons, we affirm Cuevas Molina's sentence.

**AFFIRMED.**