[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11796
Non-Argument Calendar
_____

D.C. Docket No. 7:18-cr-00397-LSC-JEO-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN CHRISTOPHER DOBBS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(February 3, 2020)

Before BRANCH, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

John Dobbs appeals his 120-month sentence for possession of a firearm as a convicted felon.  Dobbs raises two issues on appeal.  First, he argues that the district court violated Rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure by failing to find that he used the firearm in connection with kidnapping his then-wife.  Second, Dobbs argues that, even if the district court did not violate Rule 32(i)(3)(B), it clearly erred by applying an upward offense-level adjustment because there was insufficient evidence that he kidnapped her.  We hold that the district court's finding that Dobbs used a firearm in connection with a kidnapping was neither procedurally nor substantively defective.  Accordingly, we affirm Dobbs's sentence.

I.

A.  Facts

On January 24, 2018, J.B.[1] called the police from a fire station in Tuscaloosa, Alabama.  When the police arrived, J.B. was "emotionally distraught," "[t]errified," "shaking," and visibly injured.  She reported that her husband, Dobbs, had beaten her and held her against her will. [2]  She also told the police that Dobbs was currently armed with a pistol.  The police then located Dobbs, arrested him,

---

[1] Although Dobbs' former wife testified in open court at the sentencing hearing, in the interest of J.B.'s privacy, the parties reference her by her initials in their briefs and therefore we do so here.

[2] J.B. and Dobbs divorced in December 2018.

2

and recovered his firearm, which was loaded with 13 rounds of ammunition. Dobbs and J.B. provided different descriptions of the circumstances leading up to J.B.'s frantic call and Dobbs's arrest. We begin with the undisputed facts.

In January 2018, J.B. picked up Dobbs from a drug treatment facility in Birmingham, Alabama. The couple spent three or four days using drugs in a hotel room before continuing their drive to Tuscaloosa, Alabama. They arrived in Tuscaloosa on January 23, 2018 and immediately went to a Title Loan store. With cash in hand, they bought two cell phones and then got a hotel room. Next, they went to a pawn shop. Here is where the stories begin to diverge.

At the sentencing hearing, J.B. testified that it was Dobbs who wanted to buy the gun from the pawn shop, and he told her that "if [she] didn't go get the gun, he was going to—he would kill [her] regardless." J.B. told Dobbs that she did not want to buy the gun and he replied, "[y]ou're going to buy the f**king gun." J.B. feared disobeying him because he had abused her in the past. Dobbs walked J.B. through the necessary steps to buy the gun at the pawn shop—or, as J.B. put it, "he might as well walked in there and got it hisself [sic]." And after J.B. purchased the gun, Dobbs took it and loaded it with ammunition. Dobbs kept the gun in his possession for the remainder of the time J.B. was with him.

As Dobbs tells it, they went to the pawn shop to buy a gun because Dobbs planned to get a night job and J.B. needed a gun for protection. He claims that he

3

did not fill out the paperwork for J.B. but stood near the bullets in a separate area of the pawn shop. He argues that J.B. could have asked the clerk for help at that point, and other points during their trip, if she believed he was holding her against her will.

According to J.B., when the two returned to the hotel after purchasing the gun, Dobbs beat her and would not let her leave the room. J.B. testified that in the past, Dobbs had been mentally, physically, emotionally, and sexually abusive. And at some point, Dobbs told J.B. that if she called 9-1-1, he would kill her. J.B. testified that if she tried to leave the hotel, "he would have hurt [her]."

They went to another title loan store the next morning. J.B. drove. She testified that she did not want to be with Dobbs at all but believed Dobbs would kill her if she refused to drive to the store. Dobbs still had the gun at that point. They parked in front of the store, and Dobbs got out of the car, leaving the keys behind with J.B. As soon as Dobbs closed the door, J.B. turned the car on, drove to a nearby fire station, and called the police.

During his allocution, Dobbs admitted that he had hit his wife, but maintained that he never kidnapped her. He claimed he would never "kill her, hurt her or her family to the point where it was just out of control."

B. Plea and Sentencing

4

Upon his arrest on January 24, 2018, Dobbs was charged with kidnapping in the first degree, domestic violence in the third degree, and unlawful possession of a firearm.  In September 2018, the grand jury returned a one-count indictment for possession of a pistol as a convicted felon. 18 U.S.C. § 922(g)(1).  Dobbs entered an unnegotiated guilty plea.

In the Presentence Investigation Report ("PSI"), the probation officer determined that the proper sentencing guideline for a violation of 18 U.S.C. § 922(g)(1) is U.S.S.G. § 2K2.1.  That section provides that if the defendant was a "prohibited person" when he committed the instant offense, the base level offense is 14.  U.S. Sentencing Guidelines Manual § 2K2.1(a)(6)(A) (U.S. Sentencing Comm'n 2004).  The Guidelines define a "prohibited person" as any person who has been convicted of any crime punishable for a term exceeding one year.  *Id.*, cmt. (n.3).[3]  Because Dobbs had prior felonies, he was a prohibited person at the time of the offense.  The probation officer then found that, because Dobbs used the firearm in connection with another felony—here, kidnapping—the base-offense level should be increased by 4 to 18 pursuant to U.S.S.G. § 2K.1(b)(6)(B).  And after applying the cross reference in U.S.S.G. § 2K2.1(c)(1)(A), the probation

---

[3] The "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

officer determined that the base offense level for the substantive offense should apply.[4]  Because the substantive offense was kidnapping, the probation officer applied U.S.S.G. § 2A4.1(a), which established Dobbs's base-offense level at 32. Pursuant to U.S.S.G. § 2A4.1(b)(3), the probation officer increased the base-offense level by two because Dobbs's offense involved a dangerous weapon.  The probation officer then applied a 3-level downward adjustment for Dobbs's acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b), for a total offense level of 31.

The PSI also recited Dobbs's criminal history, which included several felony convictions.  The probation officer calculated Dobbs's criminal history score as 16, which placed him in criminal history category VI.  The probation officer noted that the statutory maximum sentence for Dobbs's offense was 120 months.  Based on Dobbs's offense level of 31 and criminal history category of VI, the probation officer determined that the Guidelines imprisonment range was 188 to 235 months. But because this range exceeded the statutory maximum sentence, the probation officer concluded that the appropriate Guideline imprisonment term was 120 months.

---

[4] The level for the substantive offense applied because under the cross reference in U.S.S.G. § 2K2.1(c)(1)(A), if the defendant used or possessed a firearm in connection with the commission of another offense, U.S.S.G. § 2X1.1 is applied in respect to that offense so long as the resulting offense is higher than the calculation under U.S.S.G. § 2K2.1.  Section 2X1.1 directs that the base offense level from the guideline for the substantive offense is applied.

6

Dobbs filed two objections to the PSI.[5]  He first objected that his offense level should not have been increased to 32 pursuant to U.S.S.G. §§ 2A4.1(a) and 2K2.1(c)(1)(A) in paragraph 13 of the PSI.  His first written objection states:

> The Defendant objects to the increase to level 32.  The Defendant denies that he used the firearm other than the possession it [sic] which he has already pled guilty to.  Additionally, he has not been found guilty nor pled guilty to any other charges related to his wife [sic] allegations.

In addition, Dobbs objected to the two-level enhancement for use of a firearm in paragraph 14:

> The Defendant was increased 2 levels.  The Defendant denies the use of the firearm.  He has pled to possession of said firearm.  He would also argue that this increase is a double counting and should not be applied.

After Dobbs filed these objections, the district court continued the sentencing hearing to allow witnesses to testify.

At this continued hearing, the government called two witnesses who testified to the facts surrounding the alleged kidnapping and the timing of the acquisition of the gun: the victim and the police officer who interviewed her.  The victim testified that on the same night that Dobbs purchased the gun, Dobbs beat her and would not let her leave the hotel room.  The police officer then took the stand and

---

[5] In making these objections, Dobbs objected to only the paragraphs in the PSI which summarized the base-level calculations and adjustments (paragraphs 13 and 14) but not the factual paragraphs underlying the proposed offense-level adjustments (paragraphs 5 through 8).

described the victim's injuries following the kidnapping, as well as Dobbs's arrest. Dobbs did not testify, and he did not call any witnesses. At the conclusion of the government witnesses' testimony, the district court overruled Dobbs's objections to the PSI and determined that the enhancement based on the kidnapping was proper:

> the guideline calculations as stated are correct; that is, the guideline offense level – and this Court adopts the factual statements contained in the presentence report and makes specific findings that the guidelines offense level is thirty-one, the criminal history category is VI, the advisory guideline imprisonment range is one hundred twenty months, the supervised release period is one to three years . . .

In so ruling, the district court necessarily found that the kidnapping elements were met and that a gun was used in the kidnapping. When the district court asked for Dobbs's response, his counsel replied that "he stands on the objection that we filed, and we certainly deny the allegations of the kidnapping."

The district judge then allowed Dobbs to speak to the court before pronouncing the sentence. He repeatedly stated that he did not kidnap his wife and that she could have left or asked for help at any time. Following Dobbs's unsworn statements, the district court sentenced Dobbs to the statutory maximum of 120 months. The district court asked whether Dobbs had any objections regarding the findings of fact, the calculations, the sentence or the manner in which the sentence was pronounced or imposed. Dobbs's counsel replied that he had none. This appeal followed.

8

II.

A. The District Court Did Not Violate Rule 32 of the Federal Rules of Criminal Procedure.

Federal Rule of Criminal Procedure 32(i)(3)(B) provides that during sentencing, the district court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B).

Dobbs argues that the district court violated this rule because it did not make any specific factual findings regarding Dobbs's objections to the kidnapping enhancement pursuant to § 2K2.1(c)(1), but rather the district court summarily overruled his objection at the conclusion of the hearing. In response, the government argues that the district court ruled on Dobbs's objection, thereby satisfying Rule 32(i)(3)(B).

In general, we review a district court's application of Rule 32 *de novo*. *See United States v. Spears*, 443 F.3d 1358, 1361 (11th Cir. 2006). But if the defendant does not preserve the objection in the district court, we will review only for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Henderson*, 409 F.3d 1293, 1307 (11th Cir. 2005). Under this standard, an appellant must show an error that is plain and affects substantial rights. *Henderson*, 409 F.3d at 1307. Even assuming *de novo* review applies, the district court did not violate Rule 32(i)(3)(B).

9

A defendant triggers Rule 32(i)(3)(B) only by objecting to statements of fact that are in the PSI. *See United States v. Owen*, 858 F.2d 1514, 1517 (11th Cir. 1988) (discussing Fed. R. Crim. P. 32(c)(3)(D)—the predecessor to Rule 32(i)(3)(B)). Defendants must assert challenges to factual statements from the PSI "with specificity and clarity." *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006). If a defendant's objections do not satisfy the specificity and clarity requirements, they are waived. *See id*.

Here, Dobbs objected to the application of the kidnapping enhancement pursuant to §2K2.1(c)(1) because he did not plead guilty to charges related to his wife and because he only possessed the gun but did not actually use it. Accordingly, the district court held an evidentiary hearing and heard testimony about the kidnapping and the firearm issues. The district court then ruled on Dobbs's objections to the kidnapping enhancement. It adopted the factual statements in the PSI, determined that the guidelines calculations were correct, and overruled Dobbs's objections. Rule 32 requires the district court to rule on disputed issues, and, following an evidentiary hearing, the district court did just that: it ruled that the kidnapping sentencing enhancement pursuant to the Guidelines was proper. Accordingly, the district court did not violate Rule 32(i)(3)(B).

10

Dobbs also argues that the district court failed to consider the timing of when J.B. was kidnapped for the purposes of the enhancement and failed to make specific factual findings regarding the elements of kidnapping.  Dobbs did not object to the timing or elements of kidnapping before the district court.  Therefore, plain error review applies.  *See Henderson*, 409 F.3d at 1307.

As an initial matter, Dobbs did not make "clear and focused objections" to these factual issues.  *Owen*, 858 F.2d at 1517.  He therefore did not trigger the district court's obligation under Rule 32 to rule on these objections.  More importantly, however, both the timing and the elements of the kidnapping were sufficiently addressed in the evidentiary hearing that the district court convened to address Dobbs's objections to the PSI.  The district court's subsequent ruling on this objection necessarily resolved these issues as well.  Accordingly, there is no error and certainly no plain error.

## B. The District Court's Findings About Kidnapping Were Not Clearly Erroneous

Dobbs also argues that the district court clearly erred in finding that the enhancement pursuant to U.S.S.G. § 2K2.1(c)(1)(A) was warranted because Dobbs used or possessed the firearm in connection with kidnapping J.B.  In general, this Court reviews a district court's factual findings, as well as its application of the Sentencing Guidelines to the facts, for clear error.  *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010); *United States v. Williams*, 340 F.3d 1231,

11

1239 (11th Cir. 2003) ("Where a determination turns primarily on the evaluation of facts . . . that are more accessible to the district court than to the court of appeals, we will defer to the district court's application of the law to those facts and apply 'clear error' review."). A finding will not be considered clearly erroneous if it is plausible in light of the record as a whole, *see United States v. Ladson*, 643 F.3d 1335, 1341 (11th Cir. 2011), or if it is based on one of two permissible views of the evidence. *United States v. Saingerard,* 621 F.3d 1341, 1343 (11th Cir. 2010). Dobbs asserts the district court clearly erred because the record was insufficient to establish (1) if and when J.B. was kidnapped; and (2) whether Dobbs used or possessed the pistol in connection with the kidnapping. We take each issue in turn.

    i.    *Kidnapping*

Here, the district court imposed an enhanced sentence because it adopted the PSI's findings that Dobbs possessed a gun in connection with the kidnapping of his wife.[6] Dobbs contends that the district court clearly erred in finding that the elements of kidnapping were met. Our review of the record reveals otherwise.

In Alabama, "a person commits the crime of kidnapping in the first degree if he abducts another person with intent to . . . accomplish or aid in the commission

---

[6] Dobbs was charged with, but not convicted of, felony kidnapping. Still, sentencing courts may consider both uncharged and acquitted conduct in determining the appropriate sentence "so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157 (1997); *United States v. Hasson*, 333 F.3d 1264, 1279 n. 19 (11th Cir. 2003).

of any felony . . . [i]nflict physical injury upon him or abuse him sexually . . . or terrorize him. . . ." Ala. Code § 13A-6-43(a).[7] Kidnapping in the first degree is a felony. Ala. Code § 13A-6-43(c). Kidnapping in the second degree is also a felony and occurs when a person abducts another person. Ala. Code § 13A-6-44. For the purposes of these crimes, the term "abduct" means "[t]o restrain a person with intent to prevent his liberation by either secreting or holding him in a place where he is not likely to be found, or using or threatening to use deadly physical force." Ala. Code § 13A-6-40(2). "Thus, in order to be abducted, a person must be restrained." *Grayson v. State*, 824 So. 2d 804, 816 (Ala. Crim. App. 1999). To "restrain" someone is to:

> intentionally or knowingly restrict a person's movements unlawfully and without consent, so as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved. Restraint is 'without consent' if it is accomplished by . . . [p]hysical force, intimidation or deception.

Ala. Code § 13A-6-40(1)a.

The record establishes that Dobbs intentionally used physical force and intimidation to restrict and confine J.B. in the motel room while in possession of the firearm. According to paragraph 5 of the PSI report (to which Dobbs did not

---

[7] Because there has been no allegation that the alleged kidnapping in this case involved interstate commerce, the federal kidnapping statute does not apply. *See* 18 U.S.C. § 1201(a); U.S.S.G. § 2K2.1 (cmt. 14(C) ("'Another offense', for purposes of subsection (c)(1), means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, regardless of whether a criminal charge was brought, or a conviction obtained.")).

object), J.B. told the police that Dobbs "held her against her will and physically abused her the night before." She reported that Dobbs made her purchase a pistol for him and "she feared Dobbs would hurt her" if she refused. At the hearing, J.B. testified that she "didn't want to be with him at all" and that Dobbs "wouldn't let [her] out of the hotel that night." She also testified that he "had the gun" in the hotel room and was "punching and beating on [her]," and that "he'd kill [her]" if she called 9-1-1 or refused to go to the title loan shop with him. The record clearly shows that Dobbs used physical force and intimidation to prevent J.B. from leaving the motel room. *See* Ala. Code §§ 13A-6-43(a), 13A-6-44; 13A-6-40(1)a. Thus, in light of the record of the whole, it is plausible that Dobbs kidnapped his wife and therefore the district court did not err in applying the enhancement.

That J.B. initially consented to joining Dobbs—in fact, she picked him up from the drug treatment facility—does not affect our conclusion. "[I]t is not necessary that" J.B.'s lack of consent "exist from the beginning of the course of conduct as long as it is present *during* the course of conduct." *Grayson*, 824 So. 2d at 816 (holding that defendant kidnapped hitchhiker even though victim voluntarily entered defendant's car); *see also Mims v. State,* 591 So. 2d 120, 128 (Ala. Crim. App. 1991) ("Even if a victim voluntarily enters a room, a defendant can still be found guilty of first degree kidnapping if the victim was then intentionally and unlawfully confined or concealed against her will."); *Musgrove v. State*, 519 So. 2d

14

565, 581 (Ala. Crim. App.), *aff'd* 519 So. 2d 586 (Ala. 1986) (holding that defendant was guilty of kidnapping in the first degree where victim voluntarily entered the defendant's motel room and was then intentionally and unlawfully confined against her will).  Accordingly, the record shows that the kidnapping began as early as the night J.B. and Dobbs purchased the pistol when Dobbs prevented J.B. from leaving the hotel room.

> ii.     *Using a firearm in connection with the kidnapping*

For the kidnapping enhancement to apply however, Dobbs must have used or possessed the firearm *in connection with* the kidnapping.  U.S.S.G. § 2K2.1(b)(6).  Dobbs contends that because the district court erred in failing to identify exactly when the kidnapping occurred, it necessarily failed to find that Dobbs possessed the firearm at the time of the commission of the kidnapping.  Thus, he argues, the cross reference could not apply.  We disagree.

For the purposes of U.S.S.G. §§ 2K2.1(b)(6)(A) and (c)(1)(A), a defendant is considered to have used a firearm in connection with another crime if the firearm "facilitated, or had the potential of facilitating," that offense.  U.S.S.G. § 2K2.1, cmt. (n.14(A)); *see also United States v. Carillo-Ayala*, 713 F.3d 82, 93 (11th Cir. 2013) (adopting the commentary's definition of "in connection with").

As discussed above, the record shows that Dobbs kidnapped his wife at the hotel room when he prevented her from leaving through threats and intimidation.

15

Dobbs does not dispute that he possessed a gun in the motel room. And J.B.'s fear of the gun prevented her from leaving: when asked during the sentencing hearing if she could have left the hotel room, she specifically stated, "No, he had a gun." Thus, the record indicates that the firearm facilitated or had the potential of facilitating Dobbs's abduction of J.B. *See* U.S.S.G. § 2K2.1, cmt. (n.14(A)). That he may have kidnapped her before acquiring the gun does not affect the conclusion that the kidnapping continued after he obtained it.

In summary, the record shows that Dobbs kidnapped J.B. and used the firearm in connection with the crime. While Dobbs argued that J.B. was free to leave the hotel room, his assertion, at best, presents one of two permissible views of the evidence. *See Saingerard*, 621 F.3d at 1343. Accordingly, the district court did not clearly err when it found that Dobbs used the firearm in connection with kidnapping J.B. and applied the cross-reference in U.S.S.G. § 2K2.1(c)(1)(A) based on that finding.

**AFFIRMED**.

16